UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NDIDI C. AZIKIWE, et al.,

                    Plaintiffs,

          - against -

NIGERIAN AIRWAYS LIMITED, et al.,

                 Defendants.
--------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

03 CV 6387 (FB) (CLP)

On December 22, 2003, this class action was commenced on behalf of a group of

passengers on a Nigerian Airways Limited ("NAL") flight that departed from John F. Kennedy

International Airport ("JFK") on November 30, 2002 and landed in Lagos, Nigeria on December

1, 2002 ("Flight WT 851"). Plaintiffs allege that in connection with Flight WT 851, defendants,

among other things, (1) demanded and collected fees for carry-on baggage; (2) misled plaintiffs

into waiting for their luggage in Lagos, knowing that the luggage was never conveyed from New

York; (3) deprived plaintiffs of their carry-on luggage; and (4) refused to transport plaintiffs

back to New York after "abruptly ceas[ing] operations" and failed to reimburse plaintiffs for the

return trip fare. (Compl. ¶¶ 14-32).[1]

Of the six defendants named in the Complaint, five were allegedly served with process in

Nigeria, including (1) NAL, (2) Mr. A. A. Okunuga, the Managing Director of NAL, (3) the

Bureau of Public Enterprises ("BPE"), (4) the Minister of Aviation of Nigeria (the "Minister of

Aviation") and (5) Nigerian Eagle Airlines Limited ("NEAL") (collectively, the "foreign

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed on December 22, 2004.

defendants"). (Pls.' Mem. at 2-5).[2] The sixth defendant, the Federal Republic of Nigeria ("FRN"), was served at the Nigerian Embassy in Washington, D.C. (Id. at 2).

Defendants argue that plaintiffs failed to properly effect service of process on defendants because plaintiffs' methods of service do not comport with the requirements of Nigerian law or of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq. (Defs.' Mem. at 2-8).[3] In a separate motion, defendants move for sanctions against plaintiffs, claiming that plaintiffs' counsel failed to sign the papers submitted in support of plaintiffs' motion for service of process.[4] (Defs.' Mot. ¶¶ 3-9).[5]

On August 2, 2004, the matter was referred to the undersigned to issue a Report and Recommendation regarding the issue of service of process on the defendants. (See Order dated Aug. 2, 2004). On January 18, 2005, this Court heard oral argument on this matter, and the parties were given time to submit additional briefing on Nigerian law.

---

[2] Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Service of Process, dated October 12, 2004, filed by plaintiffs.

[3] Citations to "Defs.' Mem." refer to Defendants' Response to Plaintiffs' Memorandum of Law in Support of Service of Process Nunc Pro Tunc, dated December 7, 2004, filed by defendants.

[4] Plaintiffs' motion for service of process was filed on the Court's Electronic Case Filing ("ECF") system in accordance with this Court's local rules, and this Court accordingly declines to strike plaintiffs' pleading.

[5] Citations to "Defs.' Mot." refer to Defendants' Motion for Sanctions, dated November 3, 2004, filed by defendants.

<u>PROCEDURAL BACKGROUND</u>

A.  <u>Service of Process</u>

In order to effect service of process on the foreign defendants in accordance with

Nigerian law, plaintiffs engaged Mr. Yohanna Paul Banu, a Barrister and Solicitor of the

Supreme Court of Nigeria.  (Pls.' Mem. at 2; Banu Aff. ¶ 1).[6]  Mr. Banu, whose office is located

in Abuja, Nigeria, represents that he has practiced law before the Nigerian courts for over six

years and has, among other things, "effected service of process on numerous parties according to

the Nigerian rules."  (Banu Aff. ¶¶ 2-3).

On January 5, 2004, Mr. Banu received a letter from plaintiffs' counsel in the United

States, enclosing a copy of the Summons and Complaint and requesting Mr. Banu's assistance in

ensuring that proper service was effected.  (<u>Id.</u> ¶¶ 5-6).  On January 15, 2004, Mr. Banu took the

Summons and Complaint to the Deputy Court Registrar of the Federal High Court Abuja (the

"Deputy Court Registrar") and requested the court's approval of and consent to service of the

Summons and Complaint upon three of the foreign defendants.  (<u>Id.</u> ¶ 7).  Included in the filing,

Mr. Banu submitted a letter addressed to the Deputy Court Registrar and another letter addressed

to the Chief Judge of the Federal High Court Lagos.  (Pls.' Mem. at 3, Exs. 2-3).  Both letters

requested registration of the submitted documents and asked for the assistance of a court bailiff

in serving process.  (<u>Id.</u>)

Two days later, the Deputy Court Registrar obtained and issued the court's approval of

---

[6] Citations to "Banu Aff." refer to the Affidavit of Mr. Yohanna Paul Banu, dated October 7, 2004, submitted in support of plaintiffs' motion for service of process.  The affidavit is attached as Exhibit 1 to the Plaintiffs' Memorandum of Law in Support of Service of Process. (<u>See</u> Pls.' Mem., Ex. 1).

service.  (Banu Aff. ¶ 8).  Mr. Banu was allegedly present when the Summons and Complaint were duly registered in the court books at the Federal High Court Abuja and when a case file was opened containing a copy of the documents filed by Mr. Banu.  (Id.)

The Federal High Court Abuja subsequently assigned Dada David Ishaya, a court bailiff, to effect service on the foreign defendants.[7]  (Pls.' Mem. at 3, Exs. 5-8; see also Banu Aff. ¶ 9).  Mr. Ishaya served some of the defendants between January 20, 2004 and January 22, 2004, and prepared an affidavit for each defendant served which attested to proper service in accordance with Nigerian Court Rules and Regulations.  (Banu Aff. ¶ 9; see Pls.' Mem., Exs. 5-8).  Mr. Banu collected the affidavits of service prepared by Mr. Ishaya and forwarded the documents on to plaintiffs' counsel in the United States.  (Banu Aff. ¶ 10).  Mr. Banu attests that service of process in the manner detailed in the affidavits was effected in accordance with Order 13(A)(1)(a) and 13(B)(23) of the Federal High Court Civil Procedure Rules.[8]  (Id. ¶ 11).

The affidavits of service indicate the details of how each of the foreign defendants served was served.  (See Pls.' Mem., Exs. 5-8).  Specifically, on January 20, 2004, Mr. Ishaya served the Attorney General of Nigeria (the "Attorney General") and the Minister of Justice of Nigeria (the "Minister of Justice") with copies of the Summons and Complaint by delivering the

---

[7] Although Mr. Banu states that Mr. Ishaya was to effect service on three foreign defendants based in Abuja (Banu Aff. ¶ 9), plaintiffs claim that Mr. Ishaya was to effect service on four foreign defendants (Pls.' Mem. at 3), and it appears from the affidavits of service that Mr. Ishaya attempted to serve four different defendants.  (Id., Exs. 5-8).

[8] Mr. Banu's affidavit, in fact, references "Federal High Court Civil Procedure Rules order Rule 23 (a) (1a) and (b23) [sic], 2000 edition service of process of a Foreign Summons is effected." (See Banu Aff. ¶ 11).  This Court notes, however, after a review of the Federal High Court Civil Procedure Rules, that Mr. Banu's affidavit most likely contained a typographical error with respect to the rule cited.

documents to the Attorney General's office, in the Federal Ministry of Justice at the Federal Secretariat in Abuja. (Pls.' Mem. at 4, Ex. 8). Mr. Aye Okon Etim, an officer in the Attorney General's office received and signed for the papers. (Id. at 5, Ex. 8).

That same day, Mr. Ishaya served the Minister of Aviation by delivering a copy of the Summons and Complaint to the Minister of Aviation's office in the Federal Ministry of Aviation at the Federal Secretariat in Abuja. (Id. at 4, Ex. 7). Mr. Benjamin E. Udoh received the papers on behalf of the Minister of Aviation's office and signed for them. (Id.)

On January 20, 2004,[9] the Summons and Complaint were served on the General Counsel and Secretary of the BPE at the BPE's headquarters at the Federal Secretariat in Abuja. (Id. at 4, Ex. 6). An executive officer, Mr. Sunday Jonathan, received and signed for the papers. (Id.)

Finally, on January 22, 2004, Mr. Ishaya served Mr. Okunuga, NAL's Managing Director, by delivering a copy of the Summons and Complaint to Mr. Okunuga's office in Abuja. (Id. at 3, Ex. 5). Mr. Usman Audu, one of Mr. Okunuga's assistants, received and signed for the papers. (Id.)

Previously, NAL had been served on December 31, 2003 by another bailiff, Jeremiah E.,[10] at NAL's main office, located in the Murtala Muhammed Airport in Ikeja, Lagos. (Id. at 3-4, Ex. 4). Mr. O.E. Daisi, Mr. Okunuga's personal assistant in the Lagos office, received and signed for the papers. (Id. at 4, Ex. 4).

---

[9] Although plaintiffs assert that the BPE was served with the Summons and Complaint on January 20, 2004 (Pls.' Mem. at 4), it is unclear from the Affidavit of Service whether the BPE was served on January 20, 2004 or January 21, 2004. (See id., Ex. 6).

[10] Plaintiffs claim that plaintiffs' counsel, Kunle Fagbenle, Esq., personally took the Summons and Complaint to the Deputy Court Register, who appointed Mr. E. to effect service. (Pls.' Mem. at 3, n.3).

B. Procedural Posture

Despite plaintiffs' efforts at service in January 2004, defendants did not file an answer or otherwise respond to the Complaint until June 3, 2004. (Id. at 5). At that time, defendants' counsel entered a notice of appearance but took no further steps to respond to the Complaint.[11] (Id.) On July 28, 2004, defendants failed to appear for a status conference with this Court, and thereafter, on July 29, 2004, plaintiffs moved for entry of a default judgment against defendants.[12] (Id.)

On August 2, 2004,[13] the Court held a telephone conference with the parties. (See Order of Aug. 2, 2004). During the conference, defendants' counsel claimed that he had not appeared for the July 28, 2004 status conference because he had not received notice of the conference.[14] (Pls.' Mem. at 5). Counsel also indicated that he did not believe that defendants were in default. (Id.) He argued that plaintiffs improperly served the foreign defendants because they failed to obtain an order from the Federal High Court of Nigeria prior to serving defendants, as required by Nigerian law. (Id. at 5-6). Defendants' counsel had, however, agreed with plaintiffs' former

---

[11] Defendants claim that despite the lack of proper service, "an official of the [f]ederal [g]overnment of Nigeria became aware that some lawsuit was pending" and "directed [d]efendants' counsel to inquire as to the existence of such a suit and to challenge the suit on the basis of non-service of process upon [d]efendants." (Defs.' Mem. at 1).

[12] Although a default judgment was entered against defendants, the district court vacated the default after defendants' counsel appeared and challenged service. (Order of Oct. 15, 2004).

[13] Although plaintiffs assert that the telephone conference was held on July 30, 2004 (Pls.' Mem. at 5), the Court's records indicate that the telephone conference was held on August 2, 2004. (See Order of Aug. 2, 2004).

[14] It is unclear why defendants' counsel, who plaintiffs allege were registered in the Court's ECF system (Pls.' Mem. at 5), did not receive the conference notice, which was transmitted through the ECF system.

counsel to extend plaintiffs' time to perfect service.  (<u>Id.</u> at 5).

Following briefing on the issue of proper service under Nigerian law, this Court held oral argument on January 18, 2005.  At that time, the Court reserved decision on the motion and gave the parties time to submit additional briefing on certain aspects of Nigerian legal procedure.

Having considered the parties' submissions and counsel's arguments, the Court finds that plaintiffs have satisfied the requirements for serving process on NAL under Nigerian law but have not satisfied the requirement for serving process on the other defendants.

<u>DISCUSSION</u>

A.  <u>Service Upon Entities in a Foreign Country</u>

Plaintiffs assert that they properly served the foreign defendants in accordance with Rule 4(f)(2)(A) and 4(h)(2) of the Federal Rules of Civil Procedure because they effected service in the manner prescribed by Nigerian law.  (Pls.' Mem. at 7-8).  Defendants contend that because plaintiffs failed to obtain an order from the Chief Judge of the Federal High Court of Nigeria, their service on the corporate and individual defendants was defective.  (Defs.' Mem. at 5-8).

1.  <u>Standards</u>

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to a court's jurisdiction.  Fed. R. Civ. P. 4.  If a defendant is not served in the manner outlined in Rule 4 and does not waive formal service, the court lacks personal jurisdiction over the defendant.  <u>See</u> <u>Martin v. N.Y. State Dep't of Mental Hygiene</u>, 588 F.2d 371, 373 (2d Cir. 1978); <u>see also</u> <u>Michelson v. Merrill Lynch,</u>

<u>Pierce, Fenner & Smith, Inc.</u>, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (providing that proper service of a summons and complaint on a defendant is a prerequisite to personal jurisdiction). "Neither actual notice nor simply naming the person in the caption of the complaint will subject defendant[] to personal jurisdiction if service was not made in substantial compliance with Rule 4." <u>Jackson v. Hayakawa</u>, 682 F.2d 1344, 1347 (9th Cir. 1982) (citations omitted).

Rule 4(f) provides that service upon an individual in a foreign country may be effected in any of the following ways:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

>> (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

>> (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

>> (C) unless prohibited by the law of the foreign country, by

>>> (i) delivery to the individual personally of a copy of the summons and the complaint; or

>>> (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

> (3) by other means not prohibited by international agreement as may be directed by the court.

Fed. R. Civ. P. 4(f)(1)-(3).  Pursuant to Rule 4(h)(2), a foreign corporation may be served outside

the United States "in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof."  Fed. R. Civ. P. 4(h)(2); <u>see</u> <u>Dimensional Communications, Inc. v. OZ Optics Ltd.</u>, 218 F. Supp. 2d 653, 655 (D. N.J. 2002); <u>Cosmetech Int'l, LLC v. Der Kwei Enterprise & Co., Ltd.</u>, 943 F. Supp. 311, 316 (S.D.N.Y. 1996).

Under Rule 4(f)(1), service may be effected on an individual or entity in a foreign country by "internationally agreed means reasonably calculated to give notice," such as through the methods authorized by the Hague Convention.  Fed. R. Civ. P. 4(f)(1).  The Hague Convention was designed to simplify and expedite the procedures for extraterritorial service of documents and to ensure that defendants served abroad would receive actual and timely notice of a pending lawsuit.  <u>See</u> <u>Trump Taj Mahal Assocs. v. Hotel Servs., Inc.</u>, 183 F.R.D. 173, 176 (D. N.J. 1998) (citation omitted).  The Hague Convention applies to all civil cases in which a judicial or extrajudicial document is transmitted for service in a foreign country, <u>see</u> <u>id.</u> (citation omitted), and "[a]s a ratified treaty, the Convention is of course the 'supreme law of the land.'" <u>Ackermann v. Levine</u>, 788 F.2d 830, 838 (2d Cir. 1986) (quoting U.S. Const. art. VI, § 1, cl. 2). Indeed, the Supreme Court has noted in dicta that compliance with the Hague Convention is mandatory in all cases in which it applies.  <u>See</u> <u>Volkswagenwerk Aktiengesellschaft v. Schlunk</u>, 486 U.S. 694, 699-700 (1988).

Under Rule 4(f)(2), service of process in a country that is not a party to the Hague Convention may be effected in three alternative ways.  Fed. R. Civ. P. 4(f)(2).  The methods of service include:  (1) the usual methods of service employed in the foreign country, Fed. R. Civ.

P. 4(f)(2)(A); (2) any method directed by the foreign authority in response to a letter rogatory,[15]

Fed. R. Civ. P. 4(f)(2)(B); or (3) if not prohibited by the law of the foreign country, (a) by

delivery made to the person individually, Fed. R. Civ. P. 4(f)(2)(C)(i), or (b) by mail requiring a

signed receipt and sent by the clerk of the court.[16]  Fed. R. Civ. P. 4(f)(2)(C)(ii).

Finally, Rule 4(f)(3) provides for service by alternate means "not prohibited by

international agreement."  Fed. R. Civ. P. 4(f)(3).  A product of the 1993 Amendments to Rule 4,

Rule 4(f)(3) has seldom been addressed by the federal courts.  Therefore, the requirements for

proper service pursuant to Rule 4(f)(3) remain ill-defined.

It would seem, however, that "[f]or reasons of comity and international relations, it

would be most appropriate for the district courts to allow such a method of service only as a last

resort."  Leslie M. Kelleher, The December 1993 Amendments to the Federal Rules of Civil

Procedure – A Critical Analysis, 12 Touro L. Rev. 7, 27 (1995).  Specifically, unlike the

---

[15] Although it is possible to effect service by letters rogatory, plaintiffs are not required to select this particular method of service in place of other alternative methods.  See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014-15 (9th Cir. 2002) (holding that there is no requirement "that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3)"); see also Mayatextil, S.A. v. Liztex U.S.A., Inc., No. 92 CV 4528, 1994 WL 198696, at *5 (S.D.N.Y. May 19, 1994) (denying motion to dismiss for lack of proper service where party served defendants' counsel instead of filing letters rogatory pursuant to the Inter-American Convention on Letters Rogatory (the "Inter-American Convention") and finding that the Inter-American Convention merely permits but does not require service by letters rogatory); accord Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 647 (5th Cir.), cert. denied, 513 U.S. 1016 (1994).

[16] Under Rule 4(f)(2)(C)(ii), plaintiffs are entitled to serve defendants by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served" if this method is not prohibited under Nigerian law.  Fed. R. Civ. P. 4(f)(2)(C)(ii).  Although it is unclear whether Nigerian law would permit service by mail, plaintiffs did not attempt service by mail, and therefore the Court need not address this issue.

alternate methods of service listed in Rule 4(f)(2), a method of service directed by the court

pursuant to Rule 4(f)(3) could conceivably violate a foreign country's law[17] and "a foreign

government may refuse to enforce any judgment obtained against one of its citizens or

domiciliaries in an American lawsuit commenced by such means."  Id.

Even where a method of service under Rule 4(f)(3) is allowed, the reasonable notice

requirement of due process must be adhered to and any offense to foreign law must be

minimized.  See Fed. R. Civ. P. 4(f)(3) advisory committee's notes on 1993 amendments

(providing that "[i]nasmuch as our Constitution requires that reasonable notice be given, an

earnest effort should be made to devise a method of communication that is consistent with due

process and minimizes offense to foreign law"); see also Federal Home Loan Mortgage Corp. v.

Mirchandani, No. 94 CV 1201, 1996 WL 534821, at *4 (E.D.N.Y. Sept. 18, 1996) (holding that

in order to confer personal jurisdiction over an individual in a foreign country, service under

Rule 4(f)(3) must comply with due process, which requires that the service be reasonably

calculated to provide notice and the opportunity to present objections).


2.  Application – Service on NAL, NEAL and Mr. Okunuga

Turning to the requirements of Rule 4(f)(1), all parties concede that Nigeria is not a

signatory to the Hague Convention.  (See Pls.' Mem. at 8, n.7 (providing that "[i]n any event, the

---

[17] Although service may not be effected under Rule 4(f)(2)(C) if the method of service is
prohibited under the laws of the foreign country, it appears that "as long as court-directed and
not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may
be accomplished in contravention of the laws of the foreign country."  See Rio Properties, Inc. v.
Rio Int'l Interlink, 284 F.3d at 1014 (citing Mayoral-Amy v. BHI Corp., 180 F.R.D. 456, 459 n.4
(S.D. Fla. 1998)).

Hague Convention does not apply here, because Nigeria is not a signatory to the Convention");

Defs.' Mem. at 6 (providing that "Nigeria is not a party to any international convention such as

the Hague")). Therefore, plaintiffs were not required to comply with the provisions of the Hague

Convention in effecting service of process on defendants in Nigeria. <u>See</u> Fed. R. Civ. P. 4(f)(1).

As for Rule 4(f)(3), plaintiffs have not sought permission to serve defendants by alternative

means in accordance with this subdivision of the Rule. <u>See</u> Fed. R. Civ. P. 4(f)(3). Instead,

plaintiffs contend that they have complied with the requirements of Rule 4(f)(2) by serving the

foreign defendants "in the manner prescribed by the law of the foreign country." Fed. R. Civ. P.

4(f)(2)(A). (<u>See also</u> Pls.' Mem. at 7-8).

Defendants, however, contend that the methods used to serve the two foreign

corporations, NAL and NEAL, and to serve Mr. Okunuga failed to comply with all of the

requirements of Nigerian law. (Defs.' Mem. at 6-8. In support of their assertion, defendants

rely on the Affidavit of Mr. Bola Odugbesan, a legal practitioner in the Nigerian Bar since

December 1989. (<u>Id.</u> at 6; <u>see also</u> Odugbesan Aff. ¶ 2).[18] According to Mr. Odugbesan, the

Federal High Court (Civil Procedure) Rules, which are controlling in Nigeria, contain "elaborate

provisions guiding and governing service of processes within and outside [the] jurisdiction, and

also receipt of processes from foreign jurisdictions." (Odugbesan Aff. ¶ 4). Mr. Odugbesan

represents that under Nigerian law, an application for service of process within Nigeria by a

foreign jurisdiction must be received by the Chief Judge of the Federal High Court (<u>id.</u> ¶ 5), and

---

[18] Citations to "Odugbesan Aff." refer to the Affidavit of Mr. Bola Odugbesan, dated November 29, 2004, submitted in support of defendants' opposition to plaintiffs' motion for service of process. The affidavit is attached as Exhibit 2 to Defendants' Response to Plaintiffs' Memorandum of Law in Support of Service of Process <u>Nunc</u> <u>Pro</u> <u>Tunc</u>. (<u>See</u> Defs.' Mem., Ex. 2).

there "must exist a Convention between the home country and the foreign country with regard to service of processes."  (Id. ¶ 6).

Although Mr. Odugbesan concedes that there has been no showing that a such a Convention exists between the United States and Nigeria (id.), he opines that the mode of service employed in the instant action was "irregular" (id. ¶ 11), and that "it is not the usual practice" for legal counsel in another country to send papers to legal counsel in Nigeria to register.  (Id. ¶ 7). Mr. Odugbesan further asserts that the Deputy Chief Registrar "is not the appropriate authority to approve service of processes from foreign jurisdictions."  (Id. ¶ 10).

Both parties point to Order 13(B)(23)[19] of the Federal High Court (Civil Procedure) Rules as providing the appropriate procedure for service of foreign process.  (See Pls.' Mem. at 9-10, Ex. 10; Defs.' Mem. at 6).  Order 13(B)(23) provides:

> Where, in any civil cause or matter pending before a court or tribunal in any foreign country with which a Convention in that behalf has been or shall be made, a request for service of any document on a person within the jurisdiction is received by the Chief Judge from the consular or other authority of the country, the following procedure shall, subject to any special provisions contained in the Convention, be adopted –
>
>> (a) the service shall be effected by the delivery of the original or a copy of the document, . . . to the party or person to be served in person by an officer of the court, unless the Court or a Judge in Chambers thinks fit otherwise to direct. . . .

Order 13(B)(23).

Defendants argue that because Order 13(B)(23) is the only rule that deals with service of

---

[19] Although plaintiffs twice mistakenly refer to Order 13(B)(23) as Order 13(B)(2) (see Pls.' Mem. at 9-10), it is clear that plaintiffs are quoting Order 13(B)(23), not Order 13(B)(2). (See id., Ex. 10).

foreign process in Nigeria, "the procedures it outlines are the sole methods of service allowed by Nigerian law." (Defs.' Mem. at 7). In the absence of any alternative mechanism, defendants assert that Order 13(B)(23) requires "receipt of [a] request for service by the Chief Judge." (Id.) Without citing any supporting authority for this proposition, defendants further extrapolate that "the ordinary meaning of the term 'request for service' is not simply 'notice of service,' but a pleading requiring an official order from the Court." (Id.) Defendants claim that a "request made in an unofficial manner of a personal letter to a judge," such as plaintiffs' January 15, 2004 letters (see Pls.' Mem., Exs. 2-3), "lacking a Certificate of Service or any other indicia of legal pleading, does not constitute anything more than an ex parte note to a private individual . . . ." (Defs.' Mem. at 7).

Defendants also point to a number of irregularities in the affidavits of service signed by Mr. Ishaya. (Id.; see Pls.' Mem., Exs. 5-8). First, the affidavits, which are essentially forms completed by the process server, state that a summons was issued "'out of this Court.'"[20] (Defs.' Mem. at 7). Defendants argue that this phrase is meant to refer to the High Court of Nigeria, not the United States District Court, Eastern District of New York, and that this distinction further supports defendants' view that the summons must be issued by the Chief Judge of the Nigerian Federal High Court. (Id.) Since no such summons was issued by the Chief Judge, defendants assert that service upon defendants was improper. (Id. at 7-8).

Second, defendants assert that one of the January 15, 2004 letters from Mr. Banu requesting registration of certain documents and asking for assistance in serving process was

_____

[20] In fact, it appears that Mr. Ishaya crossed out the word "this" from the phrase "out of this Court" in three of the four affidavits, and therefore, the language reads "out of Court." (See Pls.' Mem., Exs. 5-8).

addressed to the Chief Judge of the Federal High Court Lagos.[21]  (Id. at 8).  Since service was to

be effected in Abuja and Abuja is in a different judicial district than Lagos, defendants argue that

this letter included an improper request.  (Id.)

There are several problems with defendants' arguments.  First, Order 13(B)(23) applies

to matters pending before a court in a foreign country where Nigeria has a "Convention" with the

foreign country.  Order 13(B)(23).  Here, all parties concede that Nigeria is not a signatory to the

Hague Convention (see Pls.' Mem. at 8, n.7; Defs.' Mem. at 6); see also discussion supra at 11-

12, and there does not appear to be any other "Convention" or agreement between Nigeria and

the United States that would govern this action.  In the absence of such a "Convention," it is

unclear whether Order 13(B)(23) even applies to service of process under the instant

circumstances.  Neither plaintiffs nor defendants have cited any authority addressing this issue.

However, even if Order 13(B)(23) was applicable in the instant action, the Court finds no

support for defendants' textual reading of the Order.  The language of the provision does not

contain any requirement that the Chief Judge issue an "order" directing service; indeed, the word

"order" does not even appear in the language of the provision.  See Order 13(B)(23).  Moreover,

nothing in the plain language of Order 13(B)(23) supports defendants' argument that a formal

application to the Chief Judge must be filed and that an explicit order from the Chief Judge must

be issued before service can be effectuated.  See id.  To the contrary, the Order simply requires

that "an officer of the court" serve the "party or person to be served in person" or as otherwise

directed by the court.  Order 13(B)(23)(a).

_____

[21] One letter was addressed to the Deputy Court Registrar of the Federal High Court
Abuja (Pls.' Mem., Ex. 2), and the other letter was addressed to the Chief Judge of the Federal
High Court Lagos.  (Id., Ex. 3).

This language is consistent with the provision of Order 13 which deals with service of process generally in domestic civil cases (see Order 13(A)(2)), and with the provision of Order 13 which deals with service of process on a corporation.  (See Order 13(A)(8)).  Pursuant to Order 13(A)(2), individuals in a Nigerian action are to be served personally (Order 13(A)(2)), and pursuant to Order 13(A)(8), a corporate entity in a Nigerian action is to be served "by giving the writ or document to any director, secretary, or other principal officer, or by leaving it at the office of the corporation or company."  (Order 13(A)(8)).  Neither provision requires the issuance of an explicit order from the Chief Judge.  (See Order 13(A)(2), (A)(8)).

Based on the affidavits of service submitted by plaintiffs (see Pls.' Mem., Exs. 4-5), the Court concludes that plaintiffs' service of process on NAL was proper under Nigerian law. Specifically, Order 13(A)(23) authorizes service by personal delivery "to the party or the person to be served" by an officer of the court.  Order 13(A)(23)(a).  Here, Mr. Ishaya,[22] an officer of the court, served a copy of the Summons and Complaint on Mr. Audu, one of the Managing Director of NAL's assistants, at NAL's office in Abuja (see Pls.' Mem., Ex. 5), and Mr. E., another officer of the court, served a copy of the Summons and Complaint on Mr. Daisi, the Managing Directors' personal assistant, at NAL's office in Lagos.  (Id., Ex. 4).

Service upon a corporation under Nigerian law requires delivery of "the writ or document to any director, secretary, or other principal officer, or by leaving it at the office of the corporation or company."  Order 13(A)(8).  Thus, even if neither Mr. Audu or Mr. Daisi was a

---

[22] Although an "officer of the court" is not specifically defined in Order 13(B)(23), Order 13(A)(4)(1) provides that the court may permit a "special bailiff" to serve process and provides that such a bailiff will "for the time being . . . have the privileges and liabilities of an officer of [c]ourt."  Order 13(A)(4)(1).  In this action, service was effected by Mr. Ishaya and Mr. E, bailiffs appointed by the court.  (See Pls.' Mem. at 3; see also Banu Aff. ¶ 9).

"director, secretary, or other principal officer" of NAL, service was effective because a copy of the Summons and Complaint was left at NAL's offices in both Abuja and Lagos.  See id. Indeed, defendants do not appear to be challenging the status or authority of the NAL officials who accepted service; rather, defendants' arguments regarding why NAL was improperly served appear to be limited to the absence of a formal order from the Chief Judge.  (See Defs.' Mem. at 5-8).  Accordingly, the Court concludes that service on NAL was proper.

Regarding NEAL, plaintiffs have failed to present any documentation suggesting that service of process was effected upon NEAL.  (See, e.g., Pls.' Mem., Exs. 4-8).  The affidavits of service provided by plaintiffs' counsel do not mention service on NEAL (see id.), and plaintiffs have not suggested that service on any of the other defendants constitutes effective service on NEAL.  Thus, the Court concludes that service of process was not effected as to NEAL and therefore this Court lacks jurisdiction over NEAL.

Plaintiffs' service of process on Mr. Okunuga also appears to be defective under Nigerian law.  Specifically, Order 13(A)(23) seems to require delivery to the "person to be served."  See Order 13(A)(23)(a).  Order 13(A)(2), which governs service on individuals in domestic civil cases, also appears to require that process be "served personally."  Order 13(A)(2).  Here, the relevant affidavit of service indicates that a copy of the Summons and Complaint was delivered to Mr. Audu, one of Mr. Okunuga's assistants, not to Mr. Okunuga personally.  (See Pls.' Mem., Ex. 5).  This method of service does not appear to comport with the requirements of either Order 13(A)(23) or 13(A)(2).  While Order 13(A)(5), which applies to domestic civil suits, contemplates service upon someone other than the actual individual being served, this provision seems to require a court order authorizing such substitute service.  (See Order 13(A)(5)).

Specifically, Order 13(A)(5) provides in relevant part:

> Where it appears to the Court (either after or without an attempt at personal service) that for any reason personal service cannot be conveniently effected, the Court may order that service be effected either –
>
> > (a) by delivery of the document to an adult person at the usual or last known place of abode or business of the person to be served; or
> >
> > (b) by delivery of the document to some person being an agent of the person to be served . . . .

Order 13(A)(5).  Given that there does not appear to have been an order authorizing substitute service on an individual other than Mr. Okunuga, the Court finds that Mr. Okunuga was not properly served and accordingly concludes that this Court lacks jurisdiction over Mr. Okunuga personally.

## B.  Service Upon a Foreign State

Defendants also contend that the Court lacks jurisdiction over the FRN, the Minister of Aviation and the BPE because plaintiffs failed to properly serve these entities in accordance with FSIA.  (Defs.' Mem. at 2-5).

### 1.  Standards

The FSIA was enacted in 1976 to "define the circumstances under which lawsuits can be maintained against a foreign state or its instrumentalities in the courts of the United States." LeDonne v. Gulf Air, Inc., 700 F. Supp. 1400, 1405 (E.D. Va. 1988).  The Act provides its own specific rules and procedures for serving process on foreign states, see 28 U.S.C. § 1608(a), and

for serving process on agents and instrumentalities of a foreign state.  See 28 U.S.C. § 1608(b);

see also LeDonne v. Gulf Air, Inc., 700 F. Supp. at 1411, n.17; Obenchain Corp. v. Corporation

Nacionale de Inversiones, 656 F. Supp. 435, 437 (W.D. Pa. 1987), aff'd in part, vacated in part,

898 F.2d 142 (3d Cir. 1990).  The purpose of these procedures is "to ensure actual notice to

foreign states of the fact and substance of pending litigation."  Obenchain Corp. v. Corporation

Nacionale de Inversiones, 656 F. Supp. at 437.

Some courts have held that where the foreign state or agent or instrumentality of the

foreign state receives actual notice, technical violations of FSIA's requirements will not deprive

the court of jurisdiction.  See id. (citing Velidor v. L/P/G Benghazi, 653 F.2d 812, 821 (3d Cir.

1981)).  Other courts have required strict adherence to FSIA's requirements and have held that a

failure to follow these requirements deprives the court of jurisdiction.  See Gray v. Permanent

Mission of the People's Republic of the Congo to the United Nations, 443 F. Supp. 816, 821

(S.D.N.Y.), aff'd, 580 F.2d 1044 (2d Cir. 1978).

Under 28 U.S.C. § 1608(a), service may be effected upon a foreign state or political

subdivision thereof:

>(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
>(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
>(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

> (4) if service cannot be made within 30 days under paragraph (3),
> by sending two copies of the summons and complaint and a notice
> of suit . . . by any form of mail requiring a signed receipt, to be
> addressed and dispatched by the clerk of the court to the Secretary
> of State . . . and the Secretary shall transmit one copy of the papers
> through diplomatic channels to the foreign state . . . .

28 U.S.C. § 1608(a)(1)-(3). Thus, there are four alternative procedures for service on a foreign

state, one of which is only available if a special arrangement has been made between plaintiffs

and the foreign state. Id.

FSIA also provides detailed rules regarding service on an agency or instrumentality of a

foreign state. See 28 U.S.C. § 1608(b). According to 28 U.S.C. § 1608(b), service may be

effected:

> (1) by delivery of a copy of the summons and complaint in
> accordance with any special arrangement for service between the
> plaintiff and the agency or instrumentality; or
>
> (2) if no special arrangement exists, by delivery of a copy of the
> summons and complaint either to an officer, a managing or general
> agent, or to any other agent authorized by appointment or by law to
> receive service of process in the United States; or in accordance
> with an applicable international convention on service of judicial
> documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), and if
> reasonably calculated to give actual notice, by delivery of a copy
> of the summons and complaint, together with a translation of each
> into the official language of the foreign state –
>
>> (A) as directed by an authority of the foreign state
>> or political subdivision in response to a letter
>> rogatory or request or
>>
>> (B) by any form of mail requiring a signed receipt,
>> to be addressed and dispatched by the clerk of the
>> court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with
                    the law of the place where service is to be made.

28 U.S.C. § 1608(b)(1)-(3).  Thus, there are five alternative procedures for service on an

instrumentality or agent of a foreign state.  Id.


2.  Application – Service on the FRN, the Minister of Aviation and the BPE

        Plaintiffs do not address defendants' argument that because plaintiffs failed to effect

service in accordance with FSIA, service on the FRN, the Minister of Aviation and the BPE was

improper.  However, it is clear that the FRN, as a foreign state, is entitled to service in

accordance with 28 U.S.C. § 1608(a).  Similarly, defendants represent and plaintiffs do not

dispute that (1) the Minister of Aviation is a political subdivision of a foreign state (Defs.' Mem.

at 3), and (2) the BPE is an agent or instrumentality of a foreign state.  (Id.)  Thus, service upon

the Minister of Aviation must be effected in accordance with 28 U.S.C. § 1608(a), and service

upon the BPE must be effected in accordance with 28 U.S.C. § 1608(b).

        Turning first to service on the FRN and on the Minister of Aviation, there is no evidence

of a "special arrangement" between plaintiffs and the FRN or the Minister of Aviation in the

instant action; thus, the first method of service listed in Section 1608(a) does not apply.  See 28

U.S.C. § 1608(a)(1).  The second method provides for service in accordance with an "applicable

international convention," 28 U.S.C. § 1608(a)(2), and no such convention exists between

Nigeria and the United States.  See discussion supra at 15-16.  The third method requires that a

copy of the Summons and Complaint, along with a "notice of suit," be sent by the Clerk of the

United States District Court, Eastern District of New York, to the Ministry of Foreign Affairs of

the FRN.  See 28 U.S.C. § 1608(a)(3).  Plaintiffs have failed to demonstrate that service was

effected in this manner. Finally, the fourth method of service, which requires the Clerk of Court to dispatch the relevant papers to the Secretary of State for transmission through diplomatic channels, see 28 U.S.C. § 1608(a)(4), was not completed in this case.

Instead, plaintiffs merely attempted to effect personal service on the FRN by delivering a copy of the Summons and Complaint to the Nigerian Embassy in Washington, D.C. (Pls.' Mem. at 2). This approach is not an accepted method of service authorized by the FSIA. See 28 U.S.C. § 1608(a). Similarly, plaintiffs served the Minister of Aviation by delivering a copy of the Summons and Complaint to Mr. Udoh at the Minister of Aviation's office in the Federal Ministry of Aviation at the Federal Secretariat in Abuja. (Pls.' Mem., Ex. 7). This attempt at service also does not comply with the requirements of FSIA. See 28 U.S.C. § 1608(a). Accordingly, the Court concludes that service was not properly effected on either the FRN or the Minister of Aviation and therefore determines that this Court does not have jurisdiction over either defendant.

Similarly, service on the BPE was not effected in accordance with FSIA's provisions relating to service on an agency or instrumentality of a foreign state. See 28 U.S.C. § 1608(b). Again, there is no evidence of a "special arrangement" between plaintiffs and the BPE in the instant action, see 28 U.S.C. § 1608(b)(1), and there is no "applicable international convention" between Nigeria and the United States. See 28 U.S.C. § 1608(b)(2); see also discussion supra at 21. Plaintiffs did not serve an "agent authorized by appointment or by law to receive service of process in the United States," see 28 U.S.C. § 1608(b)(2), and did not serve the BPE "as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request." See 28 U.S.C. § 1608(b)(3)(A). Certainly, plaintiffs did not make any attempt to

obtain letters rogatory from this Court nor did plaintiffs make any formal request of the FRN, the

BPE or any other "authority" or "political subdivision" of the Nigerian government.  See, e.g.,

Lippus v. Dahlgren Manufacturing Co., 644 F. Supp. 1473, 1478-79 (E.D.N.Y. 1986) (finding

that a letter from the First Secretary in the Commercial Division of the German Democratic

Republic's New York Embassy to plaintiffs' counsel did not constitute a "request" from "an

authority of the foreign state or political subdivision").  Mr. Banu's letter and the subsequent

appointment of a bailiff do not satisfy this subdivision of the statute.  Also, there was no "form

of mail requiring a signed receipt, [which was] addressed and dispatched by the clerk of the

court to the agency or instrumentality to be served."  28 U.S.C. § 1608(b)(3)(B).   Finally,

although the FSIA permits service "as directed by order of the court consistent with the law of

the place where service is to be made," 28 U.S.C. § 1608(b)(3)(C); see, e.g., Copelco Capital,

Inc. v. General Consul of Bolivia, 940 F. Supp. 93, 95 (S.D.N.Y. 1996); Ampac Group Inc. v.

Republic of Honduras, 797 F. Supp. 973, 978 n.2 (S.D. Fla. 1992), aff'd, 40 F.3d 389 (11th Cir.

1994), there was no Order from this Court permitting such service in the instant action.

Rather, plaintiffs served a copy of the Summons and Complaint on the General Counsel

and Secretary of the BPE at the BPE's headquarters at the Federal Secretariat in Abuja, and an

executive officer signed for the papers.  (Pls.' Mem., Ex. 6).  Accordingly, the Court concludes

that service was not properly effected as to the BPE.


CONCLUSION

Although the Court finds that service was properly effected as to NAL, the Court

concludes that: (1) the methods used to serve Mr. Okunuga were not in compliance with Nigerian law; (2) NEAL does not appear to have been served; and (3) the methods used to serve the FRN, the Minister of Aviation and the BPE were not in compliance with FSIA. Accordingly, the Court respectfully recommends that the claims against Mr. Okunuga, NEAL, the FRN, the Minister of Justice and the BPE be dismissed. Plaintiffs should, however, be permitted to proceed against NAL.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        August 24, 2005


_____
Cheryl L. Pollak
United States Magistrate Judge